**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Karen Kowal, individually and on behalf of all others similarly situated, | 1:22-cv-00441 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Snyder's-Lance, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Snyder's-Lance, Inc. ("Defendant") manufactures, labels, markets, and sells Butter Snaps Pretzels in yellow-colored packaging under the Snyder's of Hanover brand (the "Product").



2.     The representation as "Butter Snaps Pretzels" is false, deceptive and misleading because the Product lacks an appreciable amount of butter.

3.     Consumers have valued butter ever since it was "invented," by nomadic tribes who carried cow's milk in their leather pouches which jostled during travel, producing a primitive version of this original dairy food.

4.     Butter has always been a natural food, made by churning cow's milk.

5.     Unscrupulous dealers have continually sought to substitute real butter with synthetic, butter-like products.

6.     This includes yellow-dyed blends of vegetable oils, such as cottonseed, palm, and canola, known colloquially as margarine.

7.     Other products attempt to imitate butter through advanced chemistry, by using negligible or *de minimis* amounts of butter, which gives consumers the impression a product contains *more* butter than it does by enhancing the butter taste.

8.     Butter has a creamy, sweet taste, due to its hundreds of lactones, or flavor compounds.

9.     Butter contains calcium, vitamins A, D, E, and K, which are absent from its imitators.

10.     In light of the effort to mislead consumers, Congress defined butter as "made exclusively from milk or cream, or both, with or without common salt, and with or without additional coloring matter, and containing not less than 80 per centum by weight of milk fat." 21 U.S.C. § 321a.

11.     A review of the ingredients show that instead of containing real butter, the Product contains "Natural Flavor (Enzyme Modified Butterfat)."

2

**INGREDIENTS:** Enriched Flour (Wheat Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Water, Yeast, Bromelain, Malt (Tapioca Syrup, Malt Extract), Canola Oil, Salt, Maltodextrin, Natural Flavor (Enzyme Modified Butterfat), Modified Corn Starch, Acetic Acid, Soda.

**INGREDIENTS:** Enriched Flour (Wheat Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Water, Yeast, Bromelain, Malt (Tapioca Syrup, Malt Extract), Canola Oil, Salt, Maltodextrin, Natural Flavor (Enzyme Modified Butterfat), Modified Corn Starch, Acetic Acid, Soda.

12.    "Enzyme Modified Butterfat" is not real butter but consists of literal "fractions" or microscopic drops of real butter, to which enzymes are added.

13.    These enzymes function as catalysts, accelerating chemical reactions by well over a million-fold, so that reactions that would take years in the absence of catalysis occur in fractions of seconds.

14.    These enzymes cause the butter to release volatile and non-volatile fatty acids to give consumers the impression a product contains more butter than it does by enhancing the butter taste.

15.    Pretzels which contain butter *ingredients* are not a rare or pricy delicacy such that a reasonable consumer would verify the front label statements by scrutinizing the ingredients.

16.    Even if Plaintiff and consumers viewed the ingredients, they would not know that "Enzyme Modified Butterfat" has little to no connection to real butter.

17.    Defendant misleads consumers by including "Enzyme Modified Butterfat" in parentheses following "Natural Flavor."

18.    This causes consumers conflate the presence of butter ingredients, with butter flavor.

3

19.     If companies included sources of flavors in parentheses following the term "natural flavor," consumers would mistakenly expect those products contained non-negligible amounts of those ingredients.

20.     For instance, if a product were advertised as raspberry jam but only contained compounds extracted and concentrated from raspberries, yet the ingredient list stated, "natural flavor (real raspberries)," consumers would expect more raspberries than they actually received.

21.     This practice is also contrary to federal and identical state law, which require that "[T]he label of a food to which [a natural] flavor is added shall declare the flavor in the statement of ingredients" by the term, "natural flavor." 21 C.F.R. § 101.22(h)(1).

22.     "Enzyme Modified Butterfat" is merely a substance "used as [a] flavoring agent[s]," which purports to provide a semblance of butter flavor." 21 C.F.R. § 184.1287(c)(1).

23.     The Product also contains *more* vegetable oil, a traditional substitute for butter, than "butter flavor," shown through the listing of canola oil ahead of "Enzyme Modified Butterfat" on the ingredient list.

24.     Other companies sell pretzels which promote butter but do not mislead consumers with respect to the presence of butter *ingredients*, and disclose they merely have the taste of butter, through front label statements of "Artificially Flavored."






25. Whether a product contains real butter or only tastes like butter is basic front label information consumers rely on when making quick decisions at the store.

26. Defendant did not have to name the Product "Butter Snaps Pretzels," but chose to, since this is more enticing to consumers.

27. The Product contains and makes other representations and omissions which are false

5

or misleading.

28.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

29.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

31.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

32.    The Product is sold for a price premium compared to other similar products, for no less than $3.69 per 12 oz, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

33.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

34.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

35.    Plaintiff Karen Kowal is a citizen of Illinois.

36.    Defendant Snyder's-Lance, Inc. is a North Carolina corporation with a principal place of business in Charlotte, Mecklenburg County, North Carolina

37.    Plaintiff and Defendant are citizens of different states.

38.    The Product is available to consumers from third-parties, which includes grocery

stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

39.    Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, i.e., Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

## Parties

40.    Plaintiff Karen Kowal is a citizen of Oak Lawn, Cook County, Illinois.

41.    Defendant Snyder's-Lance, Inc. is a North Carolina corporation with a principal place of business in Charlotte, North Carolina, Mecklenburg County.

42.    Defendant accurately describes itself as "America's Pretzel Bakery Since 1909," with its over $200 million in annual pretzel sales exceeding all other competitors.

43.    The "Hanover" in the "Snyder's of Hanover" brand name refers to the Pennsylvania city which is one of the main areas settled by the group referred to by ethnologists as the Pennsylvania Dutch, descendants of German-speaking European immigrants.

44.    From their American roots in Southern and Central Pennsylvania in the 18th century, this important group, including the Amish and Mennonites, earned a reputation as hardworking, inventive, charitable, and religious.

45.    According to food historian W. W. Weaver, the Pennsylvania Dutch are responsible for commercializing traditional hard pretzels, which originated in Germanic Europe during medieval times.

46.    Until recently, Snyder's of Hanover was controlled by the Snyder family, direct descendants of the founder and patriarch, Harry V. Warehime.

47.    Recent acquisition by a multinational conglomerate has resulted in the Snyder family's commitment to honest marketing and quality ingredients taking a backseat to meeting Wall Street expectations, instead of customer expectations.

48.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

49.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Walmart, at locations including 4700 135th St, Crestwood, IL 60418 between January 2021 and June 2021, among other times.

50.    Plaintiff believed the Product contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste.

51.    Plaintiff bought the Product because she expected it contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste because that is what the representations said and implied.

52.    Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

53.    Plaintiff did not expect a product, especially from the Snyder's of Hanover brand, would promise "Butter Snaps Pretzels" when it only contained a relative drop of "butter flavor."

54.    Plaintiff was aware of how competitor products disclosed whether they only had

butter flavor, through statements such as "Artificially Flavored," and Defendant's identification of the Product as "Butter Snaps Pretzels," without qualification, affected her purchase decision.

55.    Plaintiff was disappointed because she believed the Product contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste.

56.    Plaintiff bought the Product at or exceeding the above-referenced price.

57.    Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

58.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

59.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

60.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

61.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar snacks promoting butter, because she is unsure whether those representations are truthful.

<u>Class Allegations</u>

62.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in

the States of Iowa, Arizona, Ohio, Alabama, Louisiana, West Virginia, Michigan, Texas, Arkansas, Virginia and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

63. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

64. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

65. Plaintiff is an adequate representative because her interests do not conflict with other members.

66. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

67. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

68. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

69. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Plaintiff and class members desired to purchase a product that contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a

10

butter taste.

72.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

73.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

74.    Plaintiff relied on the representations that the Product's contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste.

75.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

76.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

77.    Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

78.    As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

79.    In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

80.     Plaintiff entered into a contract with Defendant for purchase of the Product.

81.     The terms of the contract provided that the Product's contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste.

82.     Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

83.     Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

84.     The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste.

85.     Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

86.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

87.     Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product's contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a

12

butter taste.

88.     Defendant's representations affirmed and promised that the Product's contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste.

89.     Defendant described the Product as one where the contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

90.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

91.     This duty is based on Defendant's outsized role in the market for this type of Product, a  trusted family company, known for its authentic, high-quality snacks, honestly marketed to consumers and market leader.

92.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

93.     Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

94.     Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

95.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

96.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

97.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

98.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected its contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

99.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

100.  Defendant had a duty to truthfully represent the Product, which it breached.

101.  This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted family company, known for its authentic, high-quality snacks, honestly marketed to consumers.

102.  Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency and putting customers first.

103.  These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

14

104.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

105.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

106.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

107.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its contained a non-negligible amount of butter ingredients, instead of a de minimis or negligible amount, such as fractions and compounds of butter, modified through enzymatic reactions, to merely provide a butter taste.

108.   Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity of the representations.

109.   Defendant knew of the issues described here yet did not address them.

110.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

111.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 26, 2022

                                       Respectfully submitted,

                                       Sheehan & Associates, P.C.
                                       /s/Spencer Sheehan
                                       60 Cuttermill Rd Ste 409
                                       Great Neck NY 11021
                                       Tel: (516) 268-7080
                                       spencer@spencersheehan.com